IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| IN RE: MCDONALD BROTHERS, INC., Debtor. | Case No. 11-81363 Chapter 11 |
|---|---|
| **Motion For Authority To Use Cash Collateral** ||

NOW COMES McDonald Brothers, Inc. (the "Debtor") and moves the Court pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1. On August 22, 2011 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its assets and operates its businesses as a debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

### BACKGROUND

3. The Debtor is a building materials and services supplier that has been a family-owned and operated business since 1885. The Debtor has three business operations in North Carolina located in the towns of Southern Pines, Siler City, and West End. The Debtor sells its products and services throughout the south-central region of North Carolina and northeastern South Carolina. Over the past few years, the Debtor's business has declined as a result of the depressed real estate market and the recession.

4. On February 12, 2010, the Debtor entered into an Amended and Restated Loan Agreement with Branch Banking and Trust Company ("BB&T") which provides for (i) a term loan in the principal amount of $4,606,909 ("Term Loan"), and (ii) a revolving line of credit in the maximum amount of $3,000,000 ("Revolver Loan," and with the Term Loan, collectively the "Loan"). The Loans are secured by the following assets (the "BB&T Collateral"):

a. A first priority security interest in all of the Debtor's existing and after-acquired accounts, inventory, equipment, deposit accounts, general intangibles and the proceeds thereof;

b. Liens against certain real property owned by the Debtor, including any income, rents and profits generated by the property; and,

c. Security Interests or liens against certain property owned by McDonald Family Farms, LLC, Angus A. McDonald, Jr. and/or his mother, Virginia C. L. McDonald.

5. As of the Petition Date, the outstanding principal, interest and fees owed under the Term Loan and the Revolver Loan totaled approximately $4,434,000 and $2,446,600, respectively.

6. As of the Petition Date, the Debtor does not know the present fair market value of the BB&T Collateral. However, the Debtor has estimated the value of the collateral to be in excess of $17,000,000.

7. The Debtor's initial assessment is that BB&T is properly perfected and has a first lien upon the Debtor's assets pledged to secure the Loans. However, the Debtor reserves for itself, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed in this Chapter 11 proceeding or any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any of the aforesaid claims, liens, security interests or rights of setoff. The Debtor does not believe that any other creditors have or assert liens upon or security interests in the Debtor's inventory and accounts receivable, or the proceeds thereof.

8. The proceeds of the accounts receivable and inventory and the rental income of the Debtor subject to the BB&T liens or security interests would constitute "cash collateral" as that term is defined in the Bankruptcy Code, the use of which is subject to the restrictions set forth in § 363.

## RELIEF REQUESTED

9. The Debtor is dependent upon continued and uninterrupted use of (a) the proceeds from collections on its accounts receivable, (b) the funds or accounts generated by the sale of its inventory and (c) the rental income generated from rental property owned by the Debtor (the "Cash Collateral").

10. While the Debtor may have some unrestricted cash in its accounts as of the Petition Date, the Debtor will need to receive and use Cash Collateral to pay on-going costs of operating, insuring, preserving, and protecting the business and property of the estate. If not permitted to use the Cash Collateral of BB&T to pay its ordinary operating expenses, the Debtor will have to close down operations forthwith. Such precipitous action, if required, would render reorganization impossible and severely reduce the fair market value of the estate, resulting in financial loss to all parties in interest. To that end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

11. An order granting interim relief substantially in the form attached, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of BB&T, the only creditor asserting an interest in Cash Collateral, and BB&T will be adequately protected for such use by a replacement lien on post-petition accounts and inventory and by the existing equity cushion in the real property securing the Loan. The use of such funds is necessary to continue operations without interruption and will generate new receivables and preserve the value of the estate for creditors.

12. The Debtor offers to provide BB&T with adequate protection as follows:

   a. The Cash Collateral shall be disbursed in payment of costs and expenses as shown in the Budget attached to the Interim Order as Exhibit A or as may otherwise be approved by the Lender, or by the Court after further notice and hearing.

   b. Providing BB&T with a continuing post-petition lien and security interest in all property and categories of property of the Debtor in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under Section 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of Cash Collateral used.

      i. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

ii. If BB&T hereafter requests the Debtor to execute and deliver financing statements or other such instruments or documents reasonably considered by said creditor to be necessary or desirable to further evidence the perfection of liens and security interest herein granted, the Debtor would be authorized and directed to execute and deliver such financing statements, instruments, and documents to BB&T without further notice, hearing, or order.

c. Providing BB&T (and the Bankruptcy Administrator) with financial reports for the Debtor in form and frequency reasonably acceptable to the BB&T and the Bankruptcy Administrator.

d. Notwithstanding the lien therein granted to BB&T to secure the Debtor's use of its Cash Collateral, such creditor shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner/operator" with respect to the operation or management of the Debtor solely by virtue of any terms or conditions of the Order.

13. The Debtor seeks authority to use Cash Collateral through and including the effective date of a confirmed plan of reorganization or liquidation, or the conversion of this case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtor may not use Cash Collateral for any purpose other than operations in the ordinary course of business or the payment of allowed administrative fees, costs, or expenses, irrespective of whether such purpose would be proper under applicable law.

14. Notwithstanding any suspension or termination of the right to use Cash Collateral as set forth above (a "Termination Date"), the Debtor shall be permitted to carve out from Cash Collateral or any replacement collateral and use, and the collateral of BB&T shall be subject to the Debtor's right to recover under Section 506(c) of the Bankruptcy Code, an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the following expenses to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate expenditures set forth in the Budget through such Termination Date:

a. The costs of operating and preserving the estate.

Cash coll motion 2011.8.21.doc 4
Case 11-81363    Doc 7    Filed 08/22/11    Page 4 of 6

      b.      Quarterly fees pursuant to 28 U.S.C. § 1930(a)(7).

      c.      Professional fees and expenses (including expert witness fees and expenses) for professionals for the Debtor after application of any prepetition retainers, and for professionals for the Committee if one is duly formed, after any prepetition retainers have been exhausted.

15.      The Debtor proposes that to the extent BB&T has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said creditor may, upon ten (10) days notice to the Debtor and opportunity to cure: (i) seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or (ii) seek an Order terminating further authority to use Cash Collateral altogether.

16.      The Debtor seeks the consent of BB&T to the use of Cash Collateral for the limited purposes set forth in this Motion.  In the absence of such consent, if not forthcoming, the Debtor asks the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of Cash Collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

Wherefore, the Debtor prays the Court for the following relief:

1.      That an interim order in the form attached hereto as **Exhibit A** be entered by this Court after notice and interim hearing (i) authorizing the Debtor to use Cash Collateral in an amount to be determined at the interim hearing based upon the proposed budget attached thereto, and (ii) providing BB&T with adequate protection as set forth herein.

2.      That a final hearing be held regarding this motion, the interim order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3.      Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtor, this the 22nd day of August, 2011.

/s/ John A. Northen

**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Stephanie Osborne-Rodgers NCSB #27394
sor@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441